UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANAS AL-KASID,

                Plaintiff,                Case No. 12-12948

v.                                          Hon. Gerald E. Rosen

L-3 COMMUNICATIONS CORPORATION,

                Defendant.

_____/

**<u>OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT</u>**

At session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____

PRESENT: Honorable Gerald E. Rosen
Chief Judge, United States District Court

## I. <u>INTRODUCTION</u>

Plaintiff Anas Al-Kasid commenced this breach of contract and unjust enrichment action against Defendant L-3 Communications Corporation ("L-3") (n/k/a Engibility Corporation) in the Wayne County Circuit Court on May 29, 2012, alleging that Defendant failed to compensate him for services rendered pursuant to a series of written independent contractor agreements between the parties. Defendant timely removed this action to this Court on July 5, 2012.

By motion filed on February 22, 2013, Defendant seeks summary judgment in its favor on both of Plaintiff's claims. With regard to Plaintiff's breach of contract claim, Defendant

1

argues that no genuine issue of material fact exists as to whether Plaintiff received all compensation to which he was entitled under the independent contractor agreements. Defendant also contends that Plaintiff's unjust enrichment claim fails as a matter of law because express agreements govern the subject matter of his claim.

Plaintiff filed a response in opposition to this motion on March 19, 2013, contending that Defendant failed to compensate him for all the hours he worked. In particular, Plaintiff claims that he was actually working and constantly available on a 24-hour basis, but that Defendant only compensated him for 12 hours of work per day. Defendant filed a reply to Plaintiff's response on April 1, 2013. Neither party demands a jury trial.

Having reviewed Defendant's motion and accompanying exhibits, Plaintiff's response, and the remainder of the record, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Defendant's motion "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's ruling.

## II. FACTUAL BACKGROUND

Plaintiff is a 33-year-old Iraqi national and a permanent resident of the United States. [Plaintiff's Dep., pp. 12-13]. In March 2006, Plaintiff applied to be an independent contractor consultant providing translation services for Defendant. [*Id.* at p. 20]. Defendant, in turn, contracted with the United States Government to provide Arabic-speaking interpreters to aid military personnel in training, including combat simulations that replicated actual Iraqi war conditions.

Pursuant to his work for L-3, Plaintiff executed a series of seven materially identical independent contractor agreements (the "Contract") that spelled out the terms and conditions of the services Plaintiff would provide as a translator. [*Id.* at p. 21]. The Contract provided that Plaintiff would work as a "consultant" and described his services as follows:

> The Consultant will perform role-play and interpretation/translation, using Arabic language/cultural skills for Mission Rehearsal Exercises [at certain military bases in the United States] at multiple and varying intervals scheduled by the Contractor and dependent upon the government's exercise schedule . . . .
>
> Lodging, accommodations, and food will be provided to the Consultant by the U.S. Government for the period of performance of each exercise. Consultants are not guaranteed access to private (single-occupancy) lodging facilities or accommodation of special dietary requirements. Consultant acknowledges that government-provided meals may only comprise military Meals Ready to Eat (MREs) or equivalents. Consultant acknowledges that government provided lodging may only comprise military barracks or field tents. Consultant is not authorized non-government provided lodging. Consultant may be authorized to purchase non-government-provided food at his/her own expense.

[Defendant's Ex. 2, p. 4].

Paragraph 3.A. of the Contract spelled out the terms of Plaintiff's compensation:

> As compensation for the services provided by the Consultant under this Agreement, the Contractor will pay the Consultant a pay rate of $20 per hour for an anticipated 12 hour work day to perform [his] duties . . . . In addition, linguists living in harsh field conditions (as determined by the contractor) for the duration of each exercise will receive up to an additional $1,000 stipend . . . to compensate them for this additional hardship (i.e. MRE meals only, no showers, no running water, field latrines).

[*Id.* at p. 1].

In addition, the Description of Services and Conditions incorporated into the Contract stated that:

> An additional four (4) hours will be allowed and billable on each of two (2) travel days incurred by the consultant for each exercise.
>
> [. . .]

3

> In the event that the U.S. Government ends the exercise early, the total compensation referred to in paragraph 3.A. of this agreement will be prorated to support the U.S. Government's requirements (i.e. 12 hours per work day). The hourly pay rate is figured at $20 per hour. Therefore, one 12-hour workday equates to $240. Two 12-hour days equate to $480.
>
> In the event that the U.S. Government extends the exercise, the total compensation referred to in paragraph 3.A. of this agreement will be increased to support the U.S. Government's requirements (i.e. 12 hours per work day at $20 per hour).

[*Id.* at pp. 4-5].

Lastly, the Contract contained the following integration and choice-of-law clauses, respectively:

> 9. ENTIRE AGREEMENT. This Agreement contains the entire agreement of the parties and there are no other promises or conditions in any other agreement whether oral or written. This Agreement supersedes any prior written or oral agreements between the parties.
>
> [. . .]
>
> 12. APPLICABLE LAW. The laws of the Commonwealth of Virginia shall govern this Agreement.

[*Id.* at p. 3].

Plaintiff performed his contractual obligations satisfactorily. [*See, e.g.*, Plaintiff's Ex. 2]. In his capacity as a translator, Plaintiff was "imbedded" with American soldiers during training sessions, living and sleeping in U.S. Army barracks, participating in training exercises, and discussing cultural and language matters with Army personnel. For these services, it is undisputed that Plaintiff was paid $20 per hour for 12 hours work per day.

Plaintiff claims, however, that throughout these sessions he was working on a 24-hour basis, or at least more than 12 hours per day. [Plaintiff's Sworn Statement, p. 2; Plaintiff's Dep., pp. 30-31, 65]. His theory is that because he was living with the troops in Army barracks and

was frequently asked questions by the soldiers about Iraqi culture, he was "on call" 24 hours a day and, therefore, should have been compensated accordingly. Yet, when asked during his deposition whether he was "paid everything that [he was] supposed to be paid," Plaintiff replied, "as the contract says, yes." [Plaintiff's Dep., 63]. Plaintiff also agreed during his deposition that the Contract he signed provided for only 12 hours of compensation per day, and that he never made any written records of the hours he allegedly worked in excess of 12 hours per day. [*Id.*, pp. 64, 68, 70-71].

It is undisputed that Plaintiff received compensation from Defendant at a daily rate of $240, corresponding to 12 hours of work at $20 per day. [*See, e.g.*, Defendant's Ex. 3, pp. 1-2; Plaintiff's Dep. p. 25]. It is also undisputed that Plaintiff received $1,000 stipends for the occasions he was required to live in "harsh field conditions," as well as additional compensation corresponding to travel hours. [Plaintiff's Dep., pp. 25-26; Defendants' Exs. 3, 4, 6, 8, 10, 11, 14, 15, 18, 19, 22, 23]. In total, Plaintiff received and cashed 15 checks from Defendant, each accompanied by an invoice detailing the days and hours when Plaintiff performed services.[1] [*See, e.g.*, Defendant's Ex. 3, p. 2].

---

[1] The parties dispute the significance of these invoices. Whereas Defendant claims that Plaintiff signed and submitted each invoice without ever seeking additional compensation for any extra hours he purportedly worked, Plaintiff counters that Defendant that prepared the invoices and gave them to its workers at the time of payment. [Defendant's Brief, pp. 4-5; Plaintiff's Sworn Statement, p. 1]. Plaintiff also claims that he considered these "invoices" to be "pay stubs," that his signature was merely a form of receipt, and that Defendant's employees told him that he needed to sign the invoices to receive payment. [*Id.* at pp. 1-2; Plaintiff's Dep., p. 67]. He further claims that Defendant's employees told him that extra hours "would be taken care of [later] and handled by extra payments," which Plaintiff claims is allegedly customary for other companies that perform similar training services. [Plaintiff's Sworn Statement, p. 2]. Lastly, Plaintiff claims that Defendant's employees failed to advise him of whether, by signing the invoices or receiving the checks, Plaintiff was releasing or waiving his right to the extra pay to which he claims he was entitled. *Id.*

Plaintiff subsequently filed this action against Defendant, alleging that he provided services on a 24-hour basis and, therefore, is entitled to compensation for the hours he worked in excess of 12 hours per day, at the rate of $20 per hour. Defendant moves for summary judgment.

### III.  APPLICABLE STANDARDS

Through the present motion, Defendant seeks an award of summary judgment in its favor on both of Plaintiff's claims. Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Moreover, any supporting or opposing affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack*, 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

The Court will apply the foregoing standards in deciding Defendant's Motion for Summary Judgment in this case.

## IV.  DISCUSSION

### A.  VIRGINIA LAW GOVERNS THE PARTIES' DISPUTE.

In its motion, Defendant argues that Plaintiff's breach of contract and unjust enrichment claims fail as a matter of law because Plaintiff received all of the compensation to which he was entitled under the Contract. Before addressing the merits of Defendant's arguments, however, the Court must first determine which state's law applies to this dispute.

In a diversity action, a federal district court "is obligated to apply the choice of law rules of the state in which it sits." *Sec. Ins. Co. of Hartford v. Kevin Tucker & Associates, Inc.*, 64 F.3d 1001, 1005 (6th Cir. 1995). Thus, the Court here must look to Michigan choice-of-law rules. In the context of contractual disputes, Michigan choice-of-law rules require courts to examine the factors articulated in sections 187 and 188 of the Restatement (Second) of Conflict of Laws. *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 448 Mich. 113, 528 N.W.2d 698, 702 (Mich. 1995); *see also Meridian Leasing, Inc. v. Assoc. Aviation Underwriters, Inc.*, 297 F. Supp. 2d 972, 977-78 (W.D. Mich. 2004). Under section 187, "[t]he first step of analysis . . . is to determine whether the contractual parties could have resolved the particular issue being litigated by an explicit provision in the contract." *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 923 (6th Cir. 2006). "If they could have, then the choice of law provision is enforceable" unless there is a strong policy reason for not doing so. *Id.*; *Prestige Capital Corp. v. Michigan Gage & Mfg., LLC*, 722 F. Supp. 2d 837, 843 (E.D. Mich. 2010). *See also In re Dow Corning Corp.*, 419 F.3d 543, 548 (6th Cir. 2005) ("[B]oth Michigan choice-of-law rules and

general equitable choice-of-law policies support enforcing parties' agreed-upon choice-of-law clauses absent any strong public policy concerns to the contrary.").

The parties here have entered into a series of independent contractor agreements, each containing an express choice-of-law provision calling for the application of Virginia law. Thus, under the aforementioned standard, this choice-of-law provision governs the present dispute, barring strong policy reasons to the contrary.

No such policy reasons exist here. First, the parties had a reasonable basis to choose Virginia law to govern the Contract, in light of the undisputed fact that the division of L-3 for which Plaintiff performed services maintains its headquarters in Virginia. [Motion, p. 7]. Second, Michigan and Virginia law apply virtually identical standards to breach of contract and unjust enrichment claims and, as a result, application of Virginia law would not be contrary to the fundamental policy of the state of Michigan.

To prevail in a breach of contract claim under Michigan law, a plaintiff must establish the following: "(1) that there was a contract; (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." *Miller-Davis Co. v. Ahrens Const., Inc.*, 296 Mich. App. 56, 817 N.W.2d 609, 619 (2012) (citations omitted). The elements of a breach of contract claim under Virginia law are virtually the same: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 671 S.E.2d 132, 135 (2009) (quoting *Filak v. George*, 267 Va. 612, 594 S.E.2d 610, 614 (2004)).

Likewise, Virginia and Michigan apply the same standards to unjust enrichments claims. Under Virginia law, unjust enrichment entails (1) the conference of a benefit on another party,

(2) where the other party knew of the benefit and reasonably should have expected to pay the other party for the benefit, and (3) the other party accepts or retains the benefit without paying for its value. *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 661 S.E.2d 834, 838 (2008). Under Michigan law, the elements of a claim for unjust enrichment are: "(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 666 N.W.2d 271, 280 (2003) (quoting *Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 509 N.W.2d 791, 796 (1993)). Further, under both Virginia and Michigan law, an unjust enrichment claim cannot survive where an express contract governs the subject matter of the dispute. *See Ellis & Myers Lumber Co. v. Hubbard*, 123 Va. 481, 96 S.E. 754, 760 (1918) ("It is only in the absence of an express or of an enforceable contract between parties, that the law (whether at law or in equity) will, from circumstances, imply a contract between them."); *Lane Construction Co. v. Brown & Root, Inc.*, 29 F. Supp. 2d 707, 727 (E.D. Va. 1998), *rev'd in part on other grounds*, 207 F.3d 717 (4th Cir. 2000); *Belle Isle Grill*, *supra*, 666 N.W.2d at 280 ("[A] contract will be implied only if there is no express contract covering the same subject.") (citation omitted).

Given the harmony between Virginia and Michigan law in the context of breach of contract and unjust enrichment disputes, the Court will enforce the parties' agreed-upon choice-of-law clauses and examine the present case under Virginia law.

**B.  DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFF'S BREACH OF CONTRACT CLAIM.**

The parties' dispute in this case hinges on the meaning of the compensation clauses set forth in the Contract between Plaintiff and Defendant. [Defendant's Ex. 2, pp. 1, 4-5]. Specifically, the parties disagree as to the meaning of Paragraph 3.A. of the Contract, which

provides that "[Defendant] Contractor will pay [Plaintiff] Consultant **a pay rate of $20 per hour for an anticipated 12 hour work day**." Whereas Plaintiff reads the aforementioned language as entitling him to receive $20 per hour for all hours worked, with no limitation as to the daily number of hours, Defendant reads it to mean – in the context of the Contract as a whole – that Plaintiff would be required to work up to 12 hours per day at a rate of $20 per hour, and accordingly be paid a maximum of $240 per day.

Under Virginia law, "[t]he interpretation of a contract presents a question of law." *PMA Capital Ins. Co. v. US Airways, Inc.*, 271 Va. 352, 626 S.E.2d 369, 372 (2006). As the *PMA* court explained, "[t]he contract is construed as written, without adding terms that were not included by the parties." 626 S.E.2d at 372. Additionally, "[t]he court must interpret the contract as a whole to determine the parties' intent." *Gordonsville Energy, L.P. v. Virginia Elec. & Power Co.*, 257 Va. 344, 512 S.E.2d 811, 816 (1999). "When the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning." *PMA Capital Ins. Co.*, *supra*, 626 S.E.2d at 372. In contrast, "[e]xtrinsic evidence can be admitted to explain an ambiguity in a document," but only where "the ambiguity [is] apparent on the face of the instrument." *Cohan v. Thurston*, 223 Va. 523, 292 S.E.2d 45, 46 (1982). And "[i]n the event of an ambiguity in the written contract, such ambiguity must be construed against the drafter of the agreement. *Martin & Martin, Inc. v. Bradley Enterprises, Inc.*, 256 Va. 288, 504 S.E.2d 849, 851 (1998). But "[a] contract term is not ambiguous merely because the parties disagree as to the term's meaning." *Ross v. Craw*, 231 Va. 206, 343 S.E.2d 312, 316 (1986); *Langman v. Alumni Ass'n of the Univ. of Virginia*, 247 Va. 491, 442 S.E.2d 669, 674 (1994) ("[T]he question of whether a writing is ambiguous is a matter of law, not of fact.").

Notably, although Plaintiff apparently seeks to introduce extrinsic evidence to augment his interpretation of the compensation clauses,[2] he does not contend that the Contract is ambiguous. Instead, Plaintiff claims that the Contract "clearly indicates that the Plaintiff will be paid for all hours worked," with no limitation as to the number of hours. [Response, pp. 13]. For the reasons set forth below, the Court agrees that the Contract is not ambiguous, but disagrees with Plaintiff's interpretation.

---

[2] For instance, Plaintiff claims via affidavit that "Defendant's employees [told him] a number of times that the extra hours would be taken care of [later] and handled by extra payments . . . ." [Plaintiff's Sworn Statement, p. 2]. As discussed below, the Court finds that the Contract is not ambiguous and, therefore, cannot use parol evidence to interpret the written contractual terms. *See Cascades North Venture Ltd. Partnership v. PRC, Inc.*, 249 Va. 574, 457 S.E.2d 370, 373 (1995). Furthermore, the Contract contains an integration clause precluding consideration of ant such oral promises.

Moreover, these statements constitute inadmissible hearsay. "Hearsay…evidence do[es]not satisfy Rule 56[] and must be disregarded." *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968 (6th Cir. 1991). Though statements of a defendant's employee authorized to speak on behalf of the defendant on a particular matter are not hearsay, see Fed. R. Evid. 801(d)(2)(C), the record here contains no evidence as to the identity of the employees who allegedly made the statements, or whether they were authorized to make them. Accordingly, these statements cannot be treated as authorized non-hearsay admissions of a party-opponent under Rule. 801(d)(2)(C).

Nor is there any evidence that these statements were made by Defendant's employees about a matter with the scope of their employment during the course of their employment under Rule 801(d)(2)(D). Therefore, the statements may not be admitted as vicarious admissions under that Rule, either.

Similarly, Plaintiff argues that other (unidentified) companies customarily paid for 24 hours per day of work, and that his reading of the Contract is consistent with industry standards. However, Plaintiff's effort to advance this "industry standards" theory consists of his own bare assertion, unsupported by evidence or citation to any authority. Plaintiff merely points to his own deposition testimony in support of the proposition that "[o]ther companies routinely paid that amount." [Response, p. 10; *see also* Plaintiff's Dep., pp. 68, 70, 74]. This bare assertion is insufficient to survive summary judgment. *See, e.g.*, *Collins v. Memphis Goodwill Indus., Inc.*, 489 F. App'x 901, 910 (6th Cir. 2012); *see also Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. 242, 248 (1986) ("The party opposing a motion for summary judgment may not rest upon the mere allegations or denial of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.") (internal quotations marks omitted).

1.     **The Contract Unambiguously Provided for 12 Hours of Compensation Per Day.**

Plaintiff appears to argue that the term "anticipated" necessarily negates Defendant's position that the Contract limits Plaintiff's "operations" pay to $240 per day. [*See* Response, p. 13]. To that end, Plaintiff mentions Virginia's "plain meaning" doctrine of contract interpretation, but otherwise fails to explain why his reading of the compensation clauses is accurate and Defendant's is not.

Plaintiff does point to a 1942 decision of the Virginia Supreme Court, *Tidewater Optical Co. v. Wittkamp*, 179 Va. 545, 19 S.E.2d 897 (19420, for the proposition that wages should be calculated based on hours of services performed, as opposed to a predetermined designated hourly time. [Response, p. 13]. Plaintiff's reliance on *Tidewater* is unfounded, however, as that case involved a claim of violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* The FLSA is inapplicable to independent contractors. 29 U.S.C. § 203(e)(1); *Chao v. Mid-Atlantic Installation Servs. Inc.*, 16 Fed. Appx. 104 (4th Cir. 2001). Further, to the extent Plaintiff may have had a claim under the FLSA, such a claim would be time-barred by the statute's three-year limitations period. 29 U.S.C. § 255(a).

Plaintiff's argument that the Contract should be interpreted in light of the Service Contract Act ("SCA"), 41 U.S.C. § 6701, *et seq.*, is also unfounded. Specifically, Plaintiff argues that "superimposed on all service contracts is a requirement that at least the prevailing local wage and benefits be paid." [Response, p. 16]. However, the SCA does not create a private right of action. *See, e.g.*, *U.S. ex rel. Sutton v. Double Day Office Services, Inc.*, 121 F.3d 531, 533 (9th Cir. 1997); *Dist. Lodge No. 166, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. TWA Services, Inc.*, 731 F.2d 711, 715 (11th Cir. 1984) ("[T]here is no implied private right of action under the SCA."). And even if the SCA applied to independent contractors, Plaintiff fails

to articulate how the pay Plaintiff received for his work – $240 per day, plus compensation for travel and hardship – somehow falls below the "prevailing local wage." In other words, Plaintiff fails to explain how the SCA would alter the interpretation of the Contract.

The Contract, admittedly, is not artfully drafted.  However, examining the Contract as a whole, the Court agrees with Defendant that the Contract's compensation provision of  "$20 per hour for an anticipated 12 hour work day to perform his duties" unambiguously contemplates a 12-hour per day cap on Plaintiff's pay for his work during military operations, absent extraordinary circumstances related to transportation and harsh work conditions.

Under Virginia law, "when the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning." *TravCo Ins. Co. v. Ward*, 284 Va. 547, 736 S.E.2d 321, 325 (2012) (internal quotations marks and citations omitted). "Words that the parties used are normally given their usual, ordinary, and popular meaning." *Id.* Crucially, "[n]o word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." *Id.*

The Merriam-Webster online dictionary defines "anticipate" as (1) "to give advance thought, discussion, or treatment to;" (2) "to meet (an obligation) before a due date;" (3) "to foresee and deal with in advance; forestall;" (4) "to use or expend in advance of actual possession;" (5) "to act before (another) often so as to check or counter;" and (6) "to look forward to as certain; expect." *See* http://www.merriam-webster.com/dictionary/anticipated (last visited April 7, 2013).  Reading the Contract as a whole, the Court finds that the plain meaning of "anticipated" does not negate Defendant's reading. To the contrary, the Court finds that it is

more reasonable to interpret the term "anticipate" as meaning "looking forward to as certain" or "expect," which would imply a 12-hour per day limit on Plaintiff's work and pay.

First, the remainder of the Contract retains a "reasonable meaning" if a $240 cap is implied. *TravCo Ins. Co.* 736 S.E.2d at 325. For example, the Contract's Description of Conditions and Services provides that "[a]n **additional** four (4) hours will be allowed and billable on each of two (2) travel days incurred by the consultant for each exercise." Just as the term "anticipated" in Paragraph 3.A. cannot be ignored, the term "additional," too, must have a reasonable meaning. And the plain meaning of "additional" indicates that the 4 billable travel hours must exist *in addition to* another number of hours – presumably the 12 hours of work time.[3] The invoices on the record corroborate this theory, as the only times Plaintiff received compensation for more than 12 hours on a given calendar day corresponded to days which included travel time. [*See, e.g.*, Defendant's Exhibit 10].

Additionally, the Contract's Description of Conditions and Services contains provisions for Plaintiff's compensation "[i]n the event that the U.S. Government ends the exercise early" or "extends the exercise." In these scenarios, "the total compensation referred to in paragraph 3.A. of this agreement will be prorated [or increased, respectively,] to support the U.S. Government's requirements **(i.e. 12 hours per work day)**" at a pay rate of "$20 per hour." The abbreviation "i.e." is from the Latin expression "*id est*" meaning "that is," "that is to say," "specifically," "explicitly," "to be exact," "to be precise." *See* http://www.merriam-webster.com/dictionary/i.e. The Contract further specifies that "**one 12-hour workday equates to $240**" and "**[t]wo 12-**

---

[3] Interestingly, on several occasions Plaintiff actually received travel pay *in excess* of the 4 additional hours provided in the Contract. [*See, e.g.*, Defendant's Ex. 10, 11, 12]. For example, Plaintiff's compensation for his work and travel on February 2, 2007 totaled 18 hours (12 of "operations" and 6 of "travel"). [Defendant's Ex. 10, p. 2]. Nevertheless, none of the invoices list Plaintiff as working more than 12 hours on "operations" on any given day.

**hour days equate to $480**." Plaintiff's reading would render these provisions virtually meaningless – at best, they would constitute mere restatements of elementary math. Accordingly, the Court finds that these sections can be more reasonably interpreted as reiterations of Defendant's position that Plaintiff's "operations" compensation would be at a rate of $20 per hour for 12 hours per day – and nothing more.

Most importantly, the record indicates that Plaintiff actually agrees with Defendant's reading. Specifically, in his deposition, Plaintiff testified in response to defense counsel's questioning as follows:

> Q. **So we just went through all of the contracts and all of the payments made to you. Would you agree with me that, according to the contracts, you were paid everything that you were supposed to be paid?**
>
> A. **I mean, as the contract says, yes.**
>
> **[…]**
>
> Q. **Okay. So if I understand your testimony, you agree with me that the written contract you signed provided for 12 hours of compensation per day; correct?**
>
> A. **Yes.**
>
> **[…]**
>
> Q. **Did anyone at L-3 Communications ever make any promise to you, or enter into any contract with you in writing, that promised you compensation of more than 12 hours per day as was spelled out in your contract?**
>
> A. **No.**

[Plaintiff's Dep., pp. 63-64, 66].

In an attempt to mitigate the detrimental impact of his own deposition testimony, Plaintiff has submitted an affidavit stating that he "did complain about the Defendant's failure to pay" and

15

that he "was told by Defendant's employees a number of times that the extra hours would be taken care of [later] and handled by extra payments . . . ." [Plaintiff's Sworn Statement, p. 2]. But the Sixth Circuit has repeatedly held that a party may not avoid summary judgment by submitting an affidavit in contradiction of his or her sworn testimony. *See Hughes v. Vanderbilt Univ.*, 215 F.3d 545, 549 (6th Cir. 2000). ("[A] party cannot create a factual issue by subsequently filing a conflicting affidavit."); *Ferguson v. Neighborhood Hous. Servs. Of Cleveland, Inc.* 780 F.2d 549, 551 (6th Cir. 1986). *See also Reid v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) ("A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony.") Further, as noted in footnote 2 above, Plaintiff's allegation that he received promises from Defendant's employees constitutes inadmissible hearsay.

Accordingly, the record viewed in a light most favorable to Plaintiff contains no genuine dispute as to the meaning of the Contract. Based on the record and controlling law, the Court finds that the Contract unambiguously limits Plaintiff's compensation to 12 hours of work per day at a rate of $20 per hour, or $240 per day, except in the event of harsh work conditions and travel days.

**2.      Plaintiff's Breach of Contract Claim Fails as a Matter of Law.**

In light of the foregoing discussion, Plaintiff's breach of contract claim cannot survive. The Contract provided that Defendant would pay Plaintiff (1) $20 per hour for each 12-hour workday, (2) an additional $20 per hour for up to 4 hours of transportation to military exercise grounds, and (3) with $1,000 stipends to compensate for harsh field conditions. Viewing the record favorably to Plaintiff, his deposition testimony establishes that Plaintiff received from Defendant every cent owed under the Contract. As a result, Plaintiff cannot establish the

elements of breach and damages necessary to sustain a breach of contract claim under Virginia law. *Sunrise*, 671 S.E.2d at 135. Accordingly, the Court will grant summary judgment in favor of Defendant on Plaintiff's breach of contract claim.

### C. **DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFF'S UNJUST ENRICHMENT CLAIM.**

Plaintiff alternatively alleges that Defendant has been unjustly enriched at his expense. As noted above, a claim of unjust enrichment under Virginia law requires the Plaintiff to establish (1) the conference of a benefit on another party, (2) where the other party knew of the benefit and reasonably should have expected to pay the other party for the benefit, and (3) the other party accepts or retains the benefit without paying for its value. *Schmidt*, 661 S.E.2d at 838. Critically, "[u]njust enrichment is a judicially-created rationale for implying a contract where no express contract exists." *Webb v. Webb*, 37 Va. Cir. 274 (1995) (not reported in S.E.2d); *Dade v. Anderson*, 247 Va. 3, 439 S.E.2d 353 (1994). This rationale, however, does not apply where an express contract does exist. *See Ellis & Myers Lumber Co.*, 96 S.E. at 760 ("[T]here being an express and an enforceable contract in existence which governed the rights of the parties, the law will not imply a contract in contravention thereof.").

An express contract exists here. More importantly, the Contract contains specific provisions that govern the compensation Plaintiff was to receive from Defendant for his services. In his response brief, Plaintiff acknowledges that "Defendant led the Plaintiff to believe that the services would be paid via the Contract terms," effectively conceding that the Contract governed Plaintiff's compensation. [Response, p. 19]. Because an express and enforceable agreement governs the parties' rights in this case, and Virginia law will only imply a contract where no such an agreement exists, Plaintiff's unjust enrichment claim fails as a matter of law.

## V. CONCLUSION

For all of the foregoing reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's February 22, 2013 Motion for Summary Judgment is GRANTED. Accordingly, this case is DISMISSED, with prejudice.


Dated: April 18, 2013
s/Gerald E. Rosen
GERALD E. ROSEN
CHIEF, U.S. DISTRICT COURT


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 18, 2013, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135